IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KATHLEEN SHERRY,              )
)
       Plaintiff,          )      Civil Case No. 05-6351-KI
)
vs.                            )      OPINION AND ORDER
)
JO ANNE B. BARNHART,       )
Commissioner of Social Security,  )
)
       Defendant.       )

       Kathryn Tassinari
       Brent Wells
       Harder, Wells, Baron & Manning, P.C.
       474 Willamette, Suite 200
       Eugene, Oregon 97401

            Attorneys for Plaintiff

       Karin J. Immergut
       United States Attorney
       District of Oregon
       Neil J. Evans
       Assistant United States Attorney
       1000 S.W. Third Avenue, Suite 600
       Portland, Oregon 97204

Page 1 - OPINION AND ORDER

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Kathleen Sherry brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that plaintiff had physical and psychological impairments considered severe. Specifically, he found that she suffered from borderline intelligence, psoriatic arthritis, obesity, and plaque arthritis. However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ concluded that plaintiff retained the residual functional capacity to sit six hours in an eight-hour day, and walk two hours in an eight-hour day. He also found that she could lift

ten pounds occasionally and five pounds frequently.  She is limited to simple, routine tasks with limited contact with coworkers.  As a result, the ALJ opined that plaintiff could perform her past relevant work as a telemarketer.

## FACTS

Plaintiff, who was 40 at the time of the hearing, alleges disability due to borderline intellectual functioning, psoriatic arthritis, plaque psoriasis and obesity.  Plaintiff graduated from high school, although she attended special education classes in spelling and math.  She worked in the fast food industry for eight years and as a telemarketer for four years.

Plaintiff has been diagnosed with psoriatic arthritis since 1999.  She lost her insurance approximately two years before that time, and as a result took only over-the-counter anti-inflammatory drugs.  She experienced foot pain and hand pain, knee and ankle pain.  She testified at the hearing that she is 4'9" and weighs 185 pounds.

On April 26, 2004, Peter Moulton, Ph.D., a licensed psychologist, evaluated plaintiff and determined that her Verbal IQ is 79, her Performance IQ is 78 and her Full Scale IQ is 77.  During the testing, she experienced difficulties in attending to visual detail, concentrating, and manipulating simple information.  Dr. Moulton opined that plaintiff could perform simple job activities, but that she would have difficulty learning and maintaining concentration and pace.  Given her report that she has lost jobs due to inability to spell and low productivity, and the testing he conducted, Dr. Moulton believed that she would have difficulty meeting production quotas.

## DISCUSSION

I. <u>Plaintiff's Credibility</u>

Plaintiff argues that the ALJ failed to give clear and convincing reasons for finding her pain symptom testimony not credible. The ALJ accepted plaintiff's testimony that she has trouble standing and walking for long periods of time given her knee and ankle problems and her obesity. However, she takes only ibuprofen, which the ALJ found inconsistent with her complaints of extreme pain. In addition, plaintiff did not leave her last employer due to pain but rather her employment was terminated due to lack of work. She did not seek medical attention at that time. She is able to do housework, play computer games, cook, attend church, and grocery shop using the store riding carts. Although she testified that she must lie down during the day, the ALJ pointed out that there is no evidence this is medically necessary.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. <u>Id.</u> at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Plaintiff produced medical evidence of underlying impairments consistent with her complaints and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting her testimony.

The ALJ improperly rejected plaintiff's testimony on the basis that she remedied her pain using only ibuprofen and that she did not seek treatment after her employment was terminated. The record reflects that plaintiff was uninsured for a period of time, and that she was unable to afford prescribed medication. Tr. 194, 274. The ALJ may not reject a claimant's testimony on this basis since the record demonstrates she could not afford treatment. Regennitter v. Commissioner of Soc. Sec. Admin., 16 F.3d 1294, 1297 (9th Cir. 1999).

The fact that the ALJ improperly considered plaintiff's lack of treatment for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003). The ALJ properly considered the fact that her last employer terminated plaintiff due to lack of work, and that plaintiff did not leave her work due to pain.

In addition, the ALJ properly pointed out there was no need for plaintiff to lie down during the day. All the medical evidence reflects her need for a sedentary job and the need for position flexibility. Plaintiff's residual functional capacity takes these requirements into account.

Page 7 - OPINION AND ORDER

Finally, the ALJ identified the activities plaintiff is able to accomplish. Within appropriate limits, the ability to engage in ordinary household activities and personal tasks requiring exertion consistent with a wide range of work supports the conclusion that the claimant's symptoms do not prevent her from working. Fair v. Bowen, 885 F2d 597, 603 (9th Cir. 1989).

In summary, the ALJ provided clear and convincing reasons, supported by substantial evidence, for his conclusion that plaintiff's description of the extent of her pain was not credible.

II.     Medical Evidence

Plaintiff contends that the ALJ improperly rejected portions of Dr. Moulton's opinion. The ALJ gave significant weight to Dr. Moulton's opinion that plaintiff would have trouble performing jobs with more than simple tasks, but he rejected Dr. Moulton's suggestion that plaintiff would have trouble meeting production quotas. The ALJ found such an opinion to be inconsistent with her job history.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial

Page 8 - OPINION AND ORDER

evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

Since Dr. Moulton was an examining physician whose testimony was uncontradicted, the ALJ was required to give clear and convincing reasons for rejecting Dr. Moulton's opinion.

According to plaintiff, the ALJ improperly rejected Dr. Moulton's opinion that plaintiff would have difficulty performing a job that requires production quotas. Plaintiff argues that holding down a job is not inconsistent with a finding of disability. Henderson v. Barnhart, 349 F.3d 434, 435 (7th Cir. 2003) (employee may have "careless or indulgent employer or be working beyond his capacity out of desperation").

Plaintiff told Dr. Moulton, and testified in the hearing, that although her last employment as a telemarketer was purportedly terminated due to lack of work, she thought she lost the job due to her inability to spell and her low productivity. She reported to Dr. Moulton that she submitted about 100 job applications, but had not received any requests for an interview. Dr. Moulton found that, based on plaintiff's testing results as well as her reported job history, she would have difficulty maintaining production quotas.

The ALJ failed to give clear and convincing reasons for rejecting this portion of Dr. Moulton's opinion. This examining physician supported his opinion with appropriate testing, and it was not inconsistent with other evidence in the record. Specifically, there is no evidence that plaintiff was required to meet production quotas in her work in the fast food industry. As for her year with the telemarketing company, plaintiff testified that she thought her employment was

Page 9 - OPINION AND ORDER

terminated due to her inability to meet production quotas. This testimony is not discredited by the fact that her employer maintained her employment for over a year. The length of time does not necessarily reflect on her employer's reasons for terminating plaintiff as she could have been terminated at that time due to her low productivity.

Accordingly, the ALJ failed to give clear and convincing reasons for rejecting the portion of Dr. Moulton's opinion in which the doctor indicated plaintiff would have difficulty meeting production quotas.

III.     Past Work

The ALJ concluded that plaintiff could perform her past relevant work as a telemarketer. Having improperly rejected Dr. Moulton's opinion as to plaintiff's inability to perform jobs with production quotas, the ALJ formed a residual functional capacity for plaintiff that failed to address her need for a job with no production quotas.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

The ALJ's residual functional capacity properly considered the pain plaintiff experiences from her arthritis, to the extent it was supported by the record. However, the residual functional capacity did not account for plaintiff's difficulty in meeting production quotas. As a result, the ALJ's residual functional capacity, and his decision that plaintiff could perform her past work, is not supported by substantial evidence in the record.

Page 10 - OPINION AND ORDER

IV.     Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

Contrary to plaintiff's argument, there are additional issues to be resolved precluding remand for a finding of disability. Since the ALJ did not err in accepting the portion of Dr. Moulton's opinion in which the doctor opined that plaintiff could maintain concentration and pace for simple activities,[1] and because the VE testified that there are unskilled, sedentary positions in the national economy that do not require production quotas, the Commissioner may be able to demonstrate that plaintiff can perform other work in the national economy. However, since the ALJ relied on Dr. Moulton's opinion that plaintiff could have casual contact with the general public, thereby rejecting the opinion of Steven A. LaTulippe, M.D. that plaintiff have little social interaction with others, any residual functional capacity should include Dr. Moulton's

---

[1] The ALJ properly accepted this conclusion over a statement earlier in the doctor's report that could be read to be contradictory–that plaintiff has "poor abilities for attention and concentration." It is the ALJ's responsibility to resolve any conflicts in the evidence. Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002).

Page 11 - OPINION AND ORDER

entire opinion as to this limitation. Specifically, Dr. Moulton opined that plaintiff "would be expected to have difficulty working with the general public in settings where she would have to provide detailed information and might have to deal with challenging individuals." Tr. 214.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this    13th    day of November, 2006.

                                                /s/ Garr M. King
                                                Garr M. King
                                                United States District Judge